(32 Misc. Rep. 336.)

### WALLACE v. McCABE et al.

### REILLY v. SAME.

(Supreme Court, Special Term, Greene County. August, 1900.)

ELECTIONS—POLITICAL COMMITTEES—OFFICERS.

The constitution of the Democratic general committee of Albany county (section 17) provides that the city committee of Albany shall consist of members of the county committee from each of the wards in said city, and that vacancies in the city committee shall be filled by members of the

city committee. Section 18 provides that officers of the general committee residing in the city of Albany shall be officers of the city committee, with the same powers and duties. *Held*, that the city committee could elect a president and corresponding secretaries, where only the first vice president, treasurer, and recording secretary of the general committee resided in the city.

Actions by John Wallace and Patrick Reilly for injunctions restraining Patrick E. McCabe and others from acting as officers of a Democratic city committee. Motions to dissolve the injunctions granted.

James J. Farren, for the motion.

Dyer & Ten Eyck (Edwin Countryman, of counsel), opposed.

CHASE, J. The Democratic general committee of the county of Albany is an organization composed of the members of the county committee elected from the several wards of the cities of Albany, Cohoes, and Watervliet, and the members of the county committee from each of the towns of the county, as provided by the constitution of such general committee. Such general committee so organized is now composed of 79 members, of whom 37 were elected from the several wards of the city of Albany. At the annual meeting of the said general committee held in December, 1899, a president, three vice presidents, treasurer, recording secretary, and two corresponding secretaries were elected. The president, second and third vice presidents, and the corresponding secretaries so elected were not then and are not now residents of the city of Albany. John Wallace, the first vice president, John McGrane, the treasurer, and Patrick Reilly, the recording secretary, so elected, were at the time, and now are, residents of the city of Albany. Section 17 of the constitution of such general committee provides:

"The city committees of the cities of Albany, Cohoes, and Watervliet shall consist of the members of the county committee from each of the wards in said cities, respectively. Vacancies in said city committees from failure to elect, by death, resignation, or otherwise, shall be filled by the members of the city committees. Such committees shall have power to supervise, direct, and control in all affairs of the party in said respective cities, and shall be governed by all provisions of the constitution and by-laws of the general committee, so far as the same may be applicable thereto, and possess the same powers and perform the same duties in the city that the general committee have and perform in the county."

Section 18 of the constitution of such general committee provides:

"The officers of the general committee residing in the city of Albany shall be the officers of the city committee, and the members of the several committees of the general committee residing in the city of Albany shall be members of the like committee of the city committee, with the same powers and duties."

Prior to June 15, 1900, the said city committee of the city of Albany had performed its duties with the said John Wallace, first vice president of the general committee, acting as president of the city committee, and the said Patrick Reilly, recording secretary of the general committee, acting as the recording secretary of the city committee. On the 11th day of June, 1900, five of the members of the city committee requested the said John Wallace, as such vice president and act-

ing president of the city committee, to call a special meeting of the city committee to be held June 15, 1900, at 8 o'clock p. m. The said Wallace refused to comply with such request. Upon the refusal and neglect of the said Wallace to comply with such request, the said five members of the city committee called a special meeting of the city committee, as provided by the by-laws of said general committee, to be held at the rooms of the county committee at the city of Albany on June 15, 1900, at 8 o'clock p. m., and such meeting was held, all the members of said city committee being present except one. The absent member had been duly served with notice that such special meeting would be held at such time and place. The meeting was called to order by Mr. Wallace, Mr. Reilly acting as recording secretary. The meeting proceeded in a harmonious manner for some time, when a resolution was offered relating to the respective committeemen filing with the chairman of the committee the names of the members of the Democratic party residing in their respective wards who are qualified to serve as Democratic election officers, and for the tabulating and further filing of the same with the mayor of the city of Albany not later than the 1st day of July, 1900. This resolution was handed to Mr. Wallace, whereupon he declared the resolution out of order. An appeal was taken from the decision of the chair, and, without a roll call being had as demanded by some of the members of the committee, Mr. Wallace declared the chair sustained, whereupon a resolution was offered as follows:

"Whereas, the president of the Democratic general committee of the county of Albany resides outside of the city of Albany, and in the town of Westerlo, Albany county, and state of New York; and whereas, Jacob L. Ten Eyck is a member of this committee, and resides in the Sixteenth ward of the city of Albany, N. Y., and represents said ward in this committee: Resolved, that Jacob L. Ten Eyck be, and he hereby is, elected president of the city committee of the city of Albany."

This resolution was declared out of order by Mr. Wallace. An appeal was taken from the decision of the chair, and a roll call was requested. Mr. Wallace refused to order a roll call, and declared the chair sustained. The roll was then called by a member of the committee, and each member of the city committee voted on such roll call, and the result of such vote was 20 votes in favor of the passage of the resolution and 16 opposed, whereupon the resolution was declared carried. Mr. Ten Eyck then demanded the gavel and the chair, claiming that he had been elected president of the city committee, and as such president was entitled, as against the vice president of the city committee, to preside at the meeting. After considerable discussion and some violence, Ten Eyck obtained possession of the gavel, and continued during that meeting as the presiding officer of the city committee. The previous resolution regarding the members of the Democratic party qualified to serve as election officers was again offered, and Mr. Reilly, as secretary, refused to read the same, and refused to recognize Mr. Ten Eyck as the president and presiding officer of the meeting. The roll was again called by a member of the committee, and the resolution declared carried. Immediately thereafter a resolution was offered as follows:

"Whereas, the corresponding secretaries of the Democratic general committee of the county of Albany reside outside of the city of Albany: Resolved, that William F. Kearney, Jr., and James F. Smith be, and they hereby are, elected corresponding secretaries of the city committee of the city of Albany."

Mr. Reilly refused to read this resolution, and again refused to recognize Mr. Ten Eyck as the presiding officer of the meeting. The roll was again called by a member of the committee. Twenty votes were recorded in favor of the resolution and one opposed. Messrs. Kearney and Smith were declared elected corresponding secretaries, and soon thereafter the meeting was adjourned.

These actions are commenced to enjoin and restrain the said Ten Eyck from acting as president, and the said Kearney and Smith from acting as corresponding secretaries, of said committee. The papers before me are voluminous, and consist principally of charges and countercharges by members of the city committee against one another. Of the 36 members of the city committee present at the meeting of June 15th, 20 belonged to one faction of the Democratic party, and 16 to another faction of the Democratic party. The charges are by each faction against the other faction, and are, in substance, that the faction accused is dishonest, and disloyal to the Democratic party, and that their aim and purpose in attempting to control the city committee is to disrupt the party that they pretend to represent, and secure some personal or factional advantage by bargaining with the opposite party. It appears from the papers before me that these charges are not new. They have been repeatedly made and considered at meetings of the city and county committees. They have been to some extent investigated by state and national conventions. It is evident that the court should not, in this collateral way, investigate and determine the truth of such charges. To attempt such investigation on affidavits is not only unwise, but entirely unnecessary on these motions.

The questions involved herein have been argued at great length, and I have before me now briefs presenting very many suggestions that it is claimed are involved in the determination of the motions herein. It seems to me that the decision herein should be based on the construction to be given to section 18 of the constitution of the general committee. Under such section of the constitution, has the city committee the right to elect officers to fill all the positions mentioned in section 3 of the constitution, so far as such positions are not held in the general committee by residents of the city of Albany? If the city committee have a right to elect officers to fill such positions, I hold that the action of the city committee in electing a president and corresponding secretaries of the city committee at the meeting on the 15th day of June, 1900, was regular, and that Jacob L. Ten Eyck is now the president of the city committee, John Wallace is the first vice president of the city committee, James McGrane is the treasurer of the city committee, Patrick Reilly is the recording secretary of the city committee, and William F. Kearney, Jr., and James F. Smith are the corresponding secretaries of the city committee, and that there is still a vacancy in the second and third vice presidencies of the city committee. If section 18 of the constitution

of the general committee had been omitted altogether from the constitution, the city committee of the city of Albany would have authority, under section 17 of the constitution, to elect a full set of officers for the city committee, as provided by section 3 of the constitution, the same as the general committee. To what extent is the authority conferred by section 17 of the constitution intended to be limited by section 18 thereof? I repeat section 18, so far as it is applicable to the matter now under consideration: "The officers of the general committee residing in the city of Albany shall be the officers of the city committee, * * * with the same powers and duties." The defendants do not deny that Mr. Wallace, as first vice president of the general committee, is the first vice president of the city committee. The express language of section 18 is that the officers of the general committee residing within the city of Albany have the same powers and duties as officers of the city committee that they have as officers of the general committee. By reference to section 4 of the constitution, it will be seen that the powers and duties of the first vice president, as an officer of the general committee, are to preside in the absence of the president, and discharge his duties during such absence. This would seem to be the limit of his powers and duties as an officer of the city committee. I understand the contention of the plaintiffs to be that section 18 of the constitution should be interpreted to mean that the officers of the general committee residing in the city of Albany are to be the only officers of the city committee. It will probably be conceded that, if none of the officers of the general committee resided within the city of Albany, there is nothing to limit the authority of the city committee to appoint a full set of officers of such committee. Assume that all the officers of the general committee, except the treasurer, were residents of the county of Albany, outside of the city of Albany, would it be seriously contended that such treasurer must remain the only officer of the city committee, and perform the duties of president, vice presidents, treasurer, and secretaries?

If in case all of the officers of the general committee, other than the treasurer, are nonresidents of the city of Albany, there is nothing in section 18 of the constitution to prohibit the election by the city committee of the other officers mentioned in section 3 of the constitution, it is equally true that the city committee can complete the list of officers so mentioned in the constitution whenever there is any one or more of the officers of the general committee residing without the city of Albany. Section 18 of the constitution only says that the officers of the general committee residing within the city of Albany shall be the officers of the city committee, with the same powers and duties that such officers have as like officers in the general committee. It follows that the city committee had the right to elect a president and corresponding secretaries. There is nothing in the custom and practice of the city committee controlling upon the court in the interpretation of the constitution of the general committee. During a portion of the time the circumstances have been entirely different than they are at the present time. During the time when the circumstances have been substantially the same as they now are,

it is quite possible that the committee were entirely satisfied to let the resident vice president act as president of the city committee, as he clearly had a right to do until a president or a senior vice president was elected by the city committee, and was actually present, ready to perform his duties. There has been no positive act by the city committee that indicates the construction of the constitution contended for by the plaintiffs. Every election of an officer by a city committee must necessarily be subject to termination in case of a change in the offices of the general committee that would entitle such new officer of the general committee to hold the offices in the city committee as provided by section 18 of the constitution.

While what I have said refers principally to the case of Wallace v. Ten Eyck, there is nothing in the case of Reilly v. Kearney and others to make a different determination of the motion in that case. Being satisfied that the construction of the constitution above indicated is controlling in these motions, it is not necessary for me to examine the other questions presented, or to determine in regard to the authority of a court of equity to interfere by injunction in a case of this kind. The motion in each case to dissolve the injunction is granted, and orders to that effect may be sent to me for signature.

Motions granted.